# EXHIBIT A

Steven C. Smith, State Bar No. 116246
Mark T. Kearney, State Bar No. 219707
Jonathan D. Mason, State Bar No. 286478
SMITH LC
1800 North Broadway, Suite 200
Santa Ana, California 92706
Telephone:  (714) 550-7720
Facsimile:   (714) 550-1251
Email:       ssmith@smith-lc.com
Email:       mkearney@smith-lc.com
Email:       jmason@smith-lc.com

Attorneys for plaintiffs ANTHONY G. THOMAS and WENDI THOMAS

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| ANTHONY G. THOMAS, and WENDI THOMAS, <br><br> Plaintiffs, <br><br> vs. <br><br> KENNETH CONETTO, an individual, ERIC KITCHEN, an individual, KIMBERLY KLOTZ, an individual, FORREST WAYNE CATLETT, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO: 1-12-CV-216322 <br><br> JUDGE PETER H. KIRWAN <br> DEPT.: D-8 <br><br> **VERIFIED FIRST AMENDED COMPLAINT FOR:** <br><br> (1) QUIET TITLE; <br> (2) CONVERSION; <br> (3) TRESPASS TO CHATTELS; and <br> (4) BREACH OF FIDUCIARY DUTY. <br><br> Complaint Filed:  January 6, 2012 <br> Trial Date:          None Set |

COME NOW Plaintiffs ANTHONY G. THOMAS ("A. Thomas") and WENDI THOMAS ("W. Thomas") (collectively "the Thomases" or "Plaintiffs") and complain against Defendants, and each of them, as follows:

### THE PARTIES

1.   Plaintiffs A. Thomas and W. Thomas are husband and wife, and are at all times mentioned herein were residents of Santa Clara County, California.

2. Defendant Kenneth Conetto (Conetto) is, and at all times mentioned herein was, a resident of Santa Clara County, California.

3. Defendant Eric Kitchen (Kitchen) was at all times mentioned herein a resident of Santa Barbara County, California. Plaintiffs understand that Mr. Kitchen recently passed away in Santa Barbara County, California. Plaintiffs know of no personal representative of Kitchen at this time; therefore, Plaintiffs join the testate and intestate successors of Kitchen, deceased, and all persons claiming by, through, or under such decedent."

4. Defendant Kimberly Klotz (Klotz) is, and at all times herein mentioned was, a resident of Santa Clara County, California.

5. While Defendant Forrest Wayne Catlett's (Catlett) present address is unknown, upon information and belief, at relevant times herein mentioned, Catlett was at times a resident of Santa Clara County and Santa Cruz County, California.

6. Kitchen, prior to his passing, was a long-time Santa Barbara attorney and a known associate of, and attorney of record for, Defendant Conetto, as well as Defendant Catlett. Catlett and Klotz, at various times relevant herein, were seeing each other socially. Conetto and Klotz have had various business dealings in the past. Each Defendant is a known associate of each other Defendant. Furthermore, A. Thomas and Defendants Conetto, Kitchen, and Catlett are involved in a dispute over the ownership of another emerald, *Ken Conetto, et al. v. Kit Morrison and Todd Armstrong*, LASC Case No. BS118649.

7. The true names, involvement and/or capacities, whether individual, corporate, governmental or associate, of Doe Defendants 1 through 100, inclusive, are unknown to Plaintiffs at the time of filing this Complaint. Plaintiffs have therefore sued said Defendants by fictitious names and will amend the Complaint by inserting the true names of the Defendants named herein as Does 1 through 100 when the true names of said Defendants have been ascertained.

8. Plaintiffs are informed and believe, and thereon allege, that each Doe Defendant is legally responsible, negligently or in some other manner, for the events and happenings herein set forth and proximately caused the damages and losses claimed by Plaintiffs in this action. All of the Defendants, including the Doe Defendants, are hereinafter referred to collectively as

"Defendants" unless otherwise specified.

9. On information and belief, at all times relevant hereto, each of the Defendants was acting as the agent, partner, co-developer, joint venture, and/or servant, of the remaining Defendants, and was acting within the course and scope of said agency and/or employment.

10. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned in this Complaint, in committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct and acted in concert with and conspired with one another in furtherance of their common plan or scheme.

11. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned in this Complaint, in addition to the wrongful conduct alleged herein as giving rise to primary liability, Defendants also aided and abetted each other in committing the wrongful acts alleged herein.

## JURISDICTION AND VENUE

12. This action arises under California law and the amount in controversy exceeds $25,000.00.

13. Jurisdiction is proper, pursuant to California Code of Civil Procedure ("CCP") section 410.10, as the dispute arises out of the parties' transactions and occurrences within the County of Santa Clara.

14. Venue is proper in this judicial district under CCP section 395 as at least half of the named Defendants resided in Santa Clara County at the commencement of this action, and the injury to personal property alleged occurred within the County of Santa Clara.

## GENERAL ALLEGATIONS

15. Beginning in fall 2001, Plaintiffs A. and W. Thomas entered into a business relationship with Defendant Conetto. The agreement was that the Thomases, relying on Conetto's apparent expertise in the field, would pay Conetto to aid and assist them in the procurement and purchase of emeralds from Brazil. Eventually, this business arrangement would produce a number of gems, as well as several disputes over their ownership.

16. In or around May 2005, Conetto approached A. Thomas, with the opportunity to

1  purchase an emerald weighing approximately 20,000 carats ("the Emerald").

17. A. Thomas agreed to purchase the Emerald for $7,500, and he and Conetto traveled together to the check cashing business of a mutual acquaintance, Bud Spadafore, where A. Thomas cashed some checks and paid Conetto for the gem.

18. After the sale was complete, A. Thomas and Conetto went to Ringsrud Gemeology in Saratoga, Santa Clara County, California, to have the gem appraised. A. Thomas, Conetto, and Klotz had previously met with Ringsrud Gemology's owner, Ronald Ringsrud ("Ringsrud"), to discuss using emeralds on saddles and women's apparel that Klotz was designing. During that previous meeting, Ringsrud had informed Klotz that he would let her know when he came across the type of emeralds she was seeking.

19. When A. Thomas and Conetto approached Ringsrud to appraise the Emerald, Conetto told Ringsrud that he had just sold the Emerald to A. Thomas and they now wanted it inspected and appraised. Ringsrud inspected the Emerald for approximately an hour to an hour and a half in their presence.

20. Shortly thereafter, on May 24, 2005, Ringsrud contacted A. Thomas to inform him that the appraisal ("the Appraisal") was finished. A. Thomas and Conetto returned to Ringsrud, and A. Thomas paid for the Appraisal and retrieved the Emerald. The Appraisal valued the gem at approximately $2 million. A true and correct copy of the Appraisal is attached hereto as **Exhibit "A"**.

21. After picking up the Emerald, A. Thomas and Conetto traveled to the Thomases' home at 17990 Barnard Road in Morgan Hill, Santa Clara County, California, where they cached the Emerald in a black, nondescript, padded duffle bag behind tools inside a cabinet in the Thomases' garage. Nobody else knew where the gem was hidden, not even W. Thomas.

22. Some months later in 2005, Ringsrud called Klotz to inform her that he had located the type of emeralds she needed for use in her business. Klotz responded that she no longer needed these emeralds because she had recently purchased a large emerald from Conetto. After Klotz described the emerald to Ringsrud in great detail, he believed she was discussing the Emerald that he had appraised for A. Thomas in May 2005. Ringsrud had no suspicion, at that

1 time, of any wrongful conduct on the part of the Defendants.

23. On August 13, 2006, the Thomases suffered a house fire while they were on vacation in Montana. The fire destroyed nearly everything in their house. The reclamation crew employed by the Thomases' insurers did not find the Emerald, causing the Thomases to assume that it had been consumed in the fire. The insurers took into their possession the remaining items, which were not returned to the Thomases. For several years, the Thomases believed that the Emerald was among the items in the insurer's possession.

24. Then, in late February 2009, a friend of the Thomases showed them an October 2005 Santa Barbara News Press article with a photograph of Defendant Kitchen holding a "19,000 carat" emerald valued at approximately $2 million. A true and correct printout of this article, retrieved from the Santa Barbara News Press online archives on June 7, 2013, is attached hereto as **Exhibit "B"**.

25. Once the Thomases saw the newspaper article in February 2009, they immediately knew that the Emerald was not destroyed in the fire and was not in the insurer's possession, and that it must have been taken from their garage between May 24, 2005 and October 2005. The Thomases immediately suspected that Conetto and/or some associates must have stolen the Emerald from the garage some time before the fire in 2006. Prior to that time, Conetto and A. Thomas were the only persons who knew where the Emerald had been stored, and A. Thomas had never resold the Emerald to Conetto or any other person. This was the first time they had any suspicion that Conetto and/or the other Defendants had stolen the Emerald from the Thomases' home back in 2005. They also began to suspect Defendants' involvement in the disappearance of other emeralds owned by the Thomases.

26. The Thomases soon hired an investigator, Jim Brice Investigations, to look into this matter. During the investigation, the Thomases learned from a local appraiser, Willow Glen Appraisal Service, that Defendants – as a group – had previously visited her business to request a re-appraisal on a 19,000-20,000 carat emerald. After seeing photos of the Emerald, Willow Glen concluded that it was the same emerald Defendants had brought with them, and that they had asked her to change the appraisal. This information confirmed the Thomases' fears that Conetto

5
VERIFIED FIRST AMENDED COMPLAINT

1  and his associates had wrongfully acquired the Emerald and otherwise deprived him of his right to
2  possess it.
3      27.    After obtaining possession of the Emerald, Defendants shaved, cut, or otherwise
4  defaced or damaged the Emerald.
5      28.    During the investigation, the investigator showed Ringsrud the October 2005
6  newspaper article with the picture of Kitchen holding an emerald. Ringsrud confirmed it was the
7  Emerald that was pictured, and he informed the investigator of the late 2005 conversation he had
8  had with Klotz about her having purchased an emerald from Conetto that matched the description
9  of the Emerald.
10     29.    Days after Ringsrud met with the investigator, Kitchen e-mailed Ringsrud to ask
11 about the investigation and to demand that Ringsrud provide him with any documents relating to
12 the Emerald or the investigation. Ringsrud did not send any documents to Kitchen.
13     30.    Since that time, with the assistance of Santa Clara County law enforcement
14 officials, the Emerald was found in the possession of a friend of Defendant Klotz. The Santa
15 Clara Sherriff's Department took it into their possession in June 2010, pending a determination of
16 the Emerald's legal owner.
17     31.    On or around January 9, 2012, Plaintiffs filed the original Complaint in this matter,
18 alleging conversion, breach of fiduciary duty, and conspiracy.

### FIRST CAUSE OF ACTION
### QUIET TITLE
#### (As Against All Defendants)

22     32.    Plaintiffs incorporate by reference each and every paragraph of this First Amended
23 Complaint as though fully set forth herein.
24     33.    The Emerald, as described above, is the property that is the subject of this action.
25     34.    As described herein, Plaintiffs have superior title to the Emerald, having purchased
26 it from Conetto in May 2005.
27     35.    Defendants spuriously claim superior title to the Emerald, adverse to Plaintiffs' title
28 claims. As described herein, Conetto and A. Thomas were the only individuals who knew the

location of the Emerald. Defendants wrongfully obtained possession of the Emerald, tried to have it re-appraised, likely changed its form by cutting it, and tried to sell it for a profit.

36. The date of which the determination of title is sought is as of May 24, 2005, the day that A. Thomas and Conetto cached the Emerald in the Thomases' garage, and the last day that Plaintiffs are certain they had the Emerald in their possession.

37. Accordingly, Plaintiffs desire a judicial declaration quieting title in the Emerald.

## SECOND CAUSE OF ACTION

## CONVERSION

### (As Against All Defendants)

38. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

39. As described herein, Plaintiffs had title to the Emerald, as well as possession of the Emerald, in or around May 2005.

40. After Plaintiffs had obtained title and possession to the Emerald, Defendants intentionally and substantially interfered with Plaintiffs' property by wrongfully taking possession of the Emerald. Furthermore, Defendants wrongfully retained possession of the Emerald by refusing to turn it over when Plaintiffs demanded its return. Furthermore, upon information and belief, Defendants cut or otherwise altered the physical form or look of the Emerald.

41. Defendants' actions with respect to the Emerald were inconsistent with Plaintiffs' possessory and ownership of the Emerald and subversive to Plaintiffs' vested interest therein. Plaintiffs did not consent to Defendants' possession of the Emerald, and in fact acted to prevent any other person from obtaining possession to it by hiding it in the garage of their home.

42. Defendants' wrongful possession of the Emerald was a substantial factor in the above-described harm to Plaintiffs.

43. Defendants' actions caused significant monetary and other damages to Plaintiffs, including, but not limited to: a diminution in the value of the Emerald; time and money expended in pursuit of the Emerald; and, the reasonable value of the use of the Emerald. As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but in no

event less than $1,000,000.

## THIRD CAUSE OF ACTION

## TRESPASS TO CHATTELS

### (As Against All Defendants)

44. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

45. As set forth above, Plaintiffs owned and were in possession of the Emerald.

46. Defendants intentionally interfered with Plaintiffs' use and possession of the Emerald. Furthermore, upon information and belief, Defendants damaged the Emerald or otherwise acted to diminish its value.

47. Plaintiffs did not consent to Defendants' actions.

48. As set forth above, Defendants' actions have significantly harmed Plaintiffs.

49. Defendants actions were a substantial factor in causing Plaintiffs' harm.

50. Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $1,000,000.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

### (As Against Defendant Conetto)

51. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

52. In or around fall 2001, Plaintiffs hired, employed, and/or contracted with Conetto as their agent to aid and assist them in their purchase of emeralds.

53. Plaintiffs reposed trust and confidence in Conetto to faithfully and fully represent their interests and advise them in connection with the acquisition of emeralds.

54. Conetto knew the Plaintiffs reposed such trust and confidence in him, encouraged them to do so, and entered into an agreement to act on their behalf.

55. Conetto breached the fiduciary duty he owed Plaintiffs in stealing and secreting their property, to Plaintiffs' detriment and damages in an amount to be determined at trial but in

no event less than $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ANTHONY G. THOMAS and WENDI THOMAS pray as follows:

On the FIRST CAUSE OF ACTION:

1. A judgment that Plaintiffs hold legal title to the Emerald; and,

2. An order directing the Santa Clara Sherriff's Department to release the Emerald to Plaintiffs;

On ALL CAUSES OF ACTION:

1. For general and special damages, including but not limited to damages for the diminution of the Emerald's value and Plaintiffs' loss of use, in an amount to be determined at the time of trial, and currently estimated to be in excess of $3,000,000.00;

2. For prejudgment interest;

3. For consequential damages;

4. For reasonable attorneys' fees as provided by statute, case law, and/or agreement,;

5. For costs of suit; and

6. For such other and further relief as the Court deems just and proper.

Dated: June 14, 2013

SMITH LC
A Professional Law Corporation

By: _____
STEVEN C. SMITH
MARK T. KEARNEY
JONATHAN D. MASON
Attorneys for Plaintiffs ANTHONY G. THOMAS and WENDI THOMAS.

9
VERIFIED FIRST AMENDED COMPLAINT

## VERIFICATION
### (C.C.P. § 446)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am a plaintiff in this matter, and I have read the contents of the foregoing First Amended Complaint. I hereby certify that the contents thereof are true to the best of my knowledge, except those matter which are alleged on information and belief, and as to those matter, I believe them to be true.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on June 14, 2013 at  Reno NV

_____
ANTHONY G. THOMAS

10
VERIFIED FIRST AMENDED COMPLAINT