1  LOUIS M. BUBALA III, ESQ.
   Nevada State Bar No. 8974
2  KAEMPFER CROWELL
   50 W. Liberty Street, Suite 700
3  Reno, Nevada   89501
   Telephone:  775.852.3900
4  Facsimile:  775.327.2011
   Email:   lbubala@kcnvlaw.com
5
   Phillip K. Wang (SBN 186712)
6  RIMON, P.C.
   One Embarcadero Center, Suite 400
7  San Francisco, California 94111
   Telephone: (415) 968-2002
8  Facsimile: (415) 968-2002
   Email:   phillip.wang@rimonlaw.com
9
   Attorneys for Defendant
10 SHERIFF OF COUNTY OF SANTA CLARA

11

12

13                UNITED STATES BANKRUPTCY COURT

14                    DISTRICT OF NEVADA

15

16 In Re:

17 ANTHONY THOMAS and WENDI          Case No. BK-N-14-50333-btb  (LEAD)
   THOMAS,
18                                   Case No. BK-N-14-50331-btb
   AT EMERALD, LLC,                  (Jointly Administered)
19
          Debtors.                   Chapter 7
20
   _____
21 JERI COPPA-KNUDSON, TRUSTEE,      Adv. Proc. No. 17-05005-btb

22        Plaintiff,                 **DECLARATION OF MICHAEL J. LEON**
                                     **GUERRERO, ESQ., IN SUPPORT OF**
23 vs.                               **MOTION BY DEFENDANT SHERIFF OF**
                                     **COUNTY OF SANTA CLARA TO SET**
24 KENNETH CONETTO, ESTATE OF ERIC   **ASIDE DEFAULT JUDGMENT, OR IN**
   KITCHEN, KIMBERLY KLOTZ, WAYNE    **THE ALTERNATIVE FOR**
25 CATLETT and SHERIFF OF SANTA      **CLARIFICATION**
   CLARA COUNTY,
26                                   Hearing Date:    April 17, 2019
          Defendants.                Hearing Time:    2:00 p.m.
27

28

*Electronically Filed*
*March 18, 2019*

I, Michael J. Leon Guerrero, declare as follows:

1.      I am over 18 years old and make this declaration of my own personal knowledge and could and would testify competently thereto if called upon to do so.  As to any matters stated on information and belief, I believe this information to be true and correct.

2.      I am a Deputy County Counsel in the Office of the County Counsel for the County of Santa Clara.  I make this declaration in support of the Motion By Defendant Sheriff of County of Santa Clara ("County") To Set Aside Default Judgment, Or In The Alternative For Clarification ("Motion").

3.      I am informed and believe that on or about January 6, 2012, Anthony Thomas and Wendi Thomas ("Plaintiffs") filed a complaint in Santa Clara County Superior Court against Kenneth Conetto, Eric Kitchen, Kimberly Klotz, and Forrest Wayne Catlett (collectively "Defendants"), Case No. 1-12-CV-216322, which asserted legal claims to apparently adjudicate who had rightful legal ownership to the Santa Clara Emerald.  The causes of action asserted in that Complaint were for Quiet Title, Conversion, Trespass To Chattels and Breach of Fiduciary Duty. The Complaint was amended about 17 months later on June 17, 2013.  The Trustee attached the First Amended Complaint in this prior lawsuit, to her complaint in the instant adversary proceeding.  A true and correct copy of the First Amended Complaint ("FAC") filed on June 17, 2013, that was copied from the case file in Santa Clara County Superior Court, is attached to this declaration as <u>Exhibit A</u> and is incorporated herein by this reference.  Through this declaration, the County seeks judicial notice of that FAC.  In paragraph 35 of the FAC, the Plaintiffs allege that the "Defendants spuriously claim superior title to the Emerald, adverse to Plaintiff's title claims."

4.      I am informed and believe that this prior lawsuit was eventually dismissed for failure to prosecute. A true and correct copy of the Minute Order to Dismiss for Failure to Prosecute that was copied from the case file in Santa Clara County Superior Court is attached to this declaration as <u>Exhibit B</u> and is incorporated herein by this reference. Through this declaration, the County seeks judicial notice of this Minute Order.

5.      I am informed and believe that Debtor AT Emerald made no claim to ownership of the Santa Clara Emerald in this prior lawsuit, and was not a party to that lawsuit.

6.      I am informed and believe that in this prior lawsuit, the Thomas debtors alleged that Conetto must have stolen the Santa Clara Emerald from the Thomas's Morgan Hill house before that house was burned down in August 2006. (FAC ¶ 25). The Thomas debtors made no allegation that they have any documents to prove their ownership in the Santa Clara Emerald. Apparently, the bill of sale or other evidence of ownership of the Santa Clara Emerald was destroyed when the Thomas' house was burned down. (FAC ¶ 23).

7.      I am informed and believe that on or about October 3, 2018, Trustee's counsel mailed a copy of the Judgment and Order Directing Turnover to deputy county counsel Cheryl Stevens at the County. As of that date, Ms. Stevens was on leave from the County Counsel's office, and she retired from County employment while on leave.

8.      On November 29, 2018, after Ms. Stevens had retired, the Trustee's counsel sent another letter addressed to Ms. Stevens at the County with a copy of the Judgment and Order Directing Turnover. This correspondence was referred to me, as I am the deputy county counsel who primarily advises the Sheriff's Office.

9.      On December 6, 2018, I had a telephone conversation with Trustee's counsel concerning this matter and regarding proof of ownership to the Santa Clara Emerald. During that conversation, I asked Trustee's counsel whether he possessed any evidence proving that the Anthony and Wendy Thomas Estates or AT Emerald LLC held legal ownership to the Santa Clara Emerald. To date, no ownership documentation has been provided to me or the County.

10.     In addition, I asked whether the Trustee would be filing the stipulation by Conetto to declare the debtors' estates as exclusive owners of the emerald, as indicated in the Trustee's Motion for Entry of Default Judgment. The Trustee's counsel informed me that he was not intending to file the Conetto stipulation because the Judgment had already been entered. I responded that this statement was confusing because it is not what was represented to this Court in the Trustee's Motion for Entry of Default Judgment. Ultimately, both Trustee's counsel and I agreed that the Sheriff's Office would not turn over possession of the Santa Clara Emerald to the Thomas estate or Trustee until the Conetto stipulation was signed and filed with the Court, as represented in the Trustee's motion. Trustee's counsel stated he would attempt to obtain Conetto's

1 │ signed stipulation, and file it with the Court prior to the Sheriff's Office handing over the emerald

2 │ but that counsel was unsure if Conetto was still alive or how to contact him.

3 │      11.    I also informed Trustee's counsel that I was unable to find anyone at the Sheriff's

4 │ Office or the County who recalls speaking with Trustee's counsel or agreeing to stipulate that the

5 │ debtors' estates are the sole owner of the emerald.  I asked counsel to identify the name of the

6 │ person at the County with whom counsel purportedly secured the agreement to the stipulation.  As

7 │ of the date of this Motion, I have received no response to my queries and have not received the

8 │ signed stipulation by Conetto stating that he has no legal ownership or interest in the Santa Clara

9 │ Emerald.

10 │      12.    On December 14, 2018, I sent an e-mail to Trustee's counsel to confirm our

11 │ conversation.  A true and correct copy of my e-mail message to Trustee's counsel dated December

12 │ 14, 2018 is attached to this declaration as Exhibit C and incorporated herein by reference.

13 │      13.    On May 11, 2017, the Trustee filed a Certificate of Service [Dkt. No. 10] for the

14 │ Summons and Complaint in this adversary proceeding, which stated, among other things, that the

15 │ Summons and Complaint were served by regular first-class mail on all the defendants.  I could not

16 │ identify anyone at the County with any knowledge that the Summons and Complaint were

17 │ personally served on the County or that the County received the Summons and Complaint.

18 │      I declare under penalty of perjury under the laws of the United States of America that the

19 │ foregoing is true and correct.

20 │      Executed this _4th_ day of March, 2019, in San Jose, California.

21 │

22 │                                       Michael J. Leon Guerrero

23 │

24 │

25 │

26 │

27 │

28 │

MOTION TO SET ASIDE DEFAULT OR FOR CLARIFICATION

1

**CERTIFICATE OF SERVICE**

2
        Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Kaempfer
Crowell, that I am over the age of 18 and not a party to the above-referenced case, and that on
3
March 18, 2019 I filed and served the foregoing **DECLARATION OF MICHAEL J. LEON
GUERRERO IN SUPPORT OF MOTION BY TO SET ASIDE DEFAULT JUDGMENT,**
4
**OR IN THE ALTERNATIVE, FOR CLARIFICATION** as indicated:

5     _X_   **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the
            United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at
6           their email addresses as set forth below:
                • Jeffrey L. Hartman:  notices@bankruptcyreno.com
7               • Jeri Coppa-Knudson:  renobktrustee@gmail.com,
                   jcoppaknudson@ecf.epiqsystems.com
8

9     _X_   **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon
            fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I
10          am readily familiar with my office's practice of collection and processing correspondence
            for mailing. Under that practice it would be deposited with the U.S. Postal Service on
11          March 18, 2019, with postage thereon fully prepaid in the ordinary course of business.

12
                              Wayne Catlett
                              PO Box 5692
13                        Santa Barbara, CA  93150-0647

14                            Kenneth Conetto
                          3637 Snell Avenue, Sp. 51
15                        San Jose, CA  95136-1316

16    ____  **BY PERSONAL SERVICE**:  I personally delivered, or caused to be delivered, the
            document(s) to the persons at these addresses:
17

18    ____  **BY DIRECT EMAIL**:  by sending directly to the party / email addresses

19          I declare under penalty of perjury that the foregoing is true and correct.

20          DATED:  March 18, 2019

21                                                    _/s/  Merrilyn Marsh_____
                                                      An Employee of KAEMPFER CROWELL
22

23

24

25

26

27

28

# EXHIBIT A

1 | Steven C. Smith, State Bar No. 116246
Mark T. Kearney, State Bar No. 219707
2 | Jonathan D. Mason, State Bar No. 286478
SMITH LC
3 | 1800 North Broadway, Suite 200
Santa Ana, California 92706
4 | Telephone:     (714) 550-7720
Facsimile:     (714) 550-1251
5 | Email:     ssmith@smith-lc.com
Email:     mkearney@smith-lc.com
6 | Email:     jmason@smith-lc.com

7 | Attorneys for plaintiffs ANTHONY G. THOMAS and
WENDI THOMAS

8

9 | **SUPERIOR COURT OF CALIFORNIA**

10 | **COUNTY OF SANTA CLARA**

11 | ANTHONY G. THOMAS, and WENDI   CASE NO: 1-12-CV-216322
12 | THOMAS,
                                  JUDGE PETER H. KIRWAN
13 |              Plaintiffs,          DEPT.: D- 8

14 | vs.

15 |                                **VERIFIED FIRST AMENDED**
                                  **COMPLAINT FOR:**
16 | KENNETH CONETTO, an individual,
ERIC KITCHEN, an individual,        **(1) QUIET TITLE;**
17 | KIMBERLY KLOTZ, an individual,    **(2) CONVERSION;**
FORREST WAYNE CATLETT, an           **(3) TRESPASS TO CHATTELS; and**
18 | individual; and DOES 1 through 100,  **(4) BREACH OF FIDUCIARY DUTY.**
inclusive,

19 |              Defendants.

20 |                                Complaint Filed:   January 6, 2012
                                  Trial Date:        None Set
21

22

23 |         COME NOW Plaintiffs ANTHONY G. THOMAS ("A. Thomas") and WENDI THOMAS

24 | ("W. Thomas") (collectively "the Thomases" or "Plaintiffs") and complain against Defendants,

25 | and each of them, as follows:

26 |                              **THE PARTIES**

27 |         1.     Plaintiffs A. Thomas and W. Thomas are husband and wife, and are at all times

28 | mentioned herein were residents of Santa Clara County, California.

1

VERIFIED FIRST AMENDED COMPLAINT

2. Defendant Kenneth Conetto (Conetto) is, and at all times mentioned herein was, a resident of Santa Clara County, California.

3. Defendant Eric Kitchen (Kitchen) was at all times mentioned herein a resident of Santa Barbara County, California. Plaintiffs understand that Mr. Kitchen recently passed away in Santa Barbara County, California. Plaintiffs know of no personal representative of Kitchen at this time; therefore, Plaintiffs join the testate and intestate successors of Kitchen, deceased, and all persons claiming by, through, or under such decedent."

4. Defendant Kimberly Klotz (Klotz) is, and at all times herein mentioned was, a resident of Santa Clara County, California.

5. While Defendant Forrest Wayne Catlett's (Catlett) present address is unknown, upon information and belief, at relevant times herein mentioned, Catlett was at times a resident of Santa Clara County and Santa Cruz County, California.

6. Kitchen, prior to his passing, was a long-time Santa Barbara attorney and a known associate of, and attorney of record for, Defendant Conetto, as well as Defendant Catlett. Catlett and Klotz, at various times relevant herein, were seeing each other socially. Conetto and Klotz have had various business dealings in the past. Each Defendant is a known associate of each other Defendant. Furthermore, A. Thomas and Defendants Conetto, Kitchen, and Catlett are involved in a dispute over the ownership of another emerald, *Ken Conetto, et al. v. Kit Morrison and Todd Armstrong*, LASC Case No. BS118649.

7. The true names, involvement and/or capacities, whether individual, corporate, governmental or associate, of Doe Defendants 1 through 100, inclusive, are unknown to Plaintiffs at the time of filing this Complaint. Plaintiffs have therefore sued said Defendants by fictitious names and will amend the Complaint by inserting the true names of the Defendants named herein as Does 1 through 100 when the true names of said Defendants have been ascertained.

8. Plaintiffs are informed and believe, and thereon allege, that each Doe Defendant is legally responsible, negligently or in some other manner, for the events and happenings herein set forth and proximately caused the damages and losses claimed by Plaintiffs in this action. All of the Defendants, including the Doe Defendants, are hereinafter referred to collectively as

SMITH LC

2

VERIFIED FIRST AMENDED COMPLAINT

SMITH LC

1  "Defendants" unless otherwise specified.

2      9.    On information and belief, at all times relevant hereto, each of the Defendants was

3  acting as the agent, partner, co-developer, joint venture, and/or servant, of the remaining

4  Defendants, and was acting within the course and scope of said agency and/or employment.

5      10.    Plaintiffs are informed and believe, and based thereon allege, that at all times

6  mentioned in this Complaint, in committing the wrongful acts alleged herein, Defendants have

7  pursued, or joined in the pursuit of, a common course of conduct and acted in concert with and

8  conspired with one another in furtherance of their common plan or scheme.

9      11.    Plaintiffs are informed and believe, and based thereon allege, that at all times

10  mentioned in this Complaint, in addition to the wrongful conduct alleged herein as giving rise to

11  primary liability, Defendants also aided and abetted each other in committing the wrongful acts

12  alleged herein.

13                          **JURISDICTION AND VENUE**

14      12.    This action arises under California law and the amount in controversy exceeds

15  $25,000.00.

16      13.    Jurisdiction is proper, pursuant to California Code of Civil Procedure ("CCP")

17  section 410.10, as the dispute arises out of the parties' transactions and occurrences within the

18  County of Santa Clara.

19      14.    Venue is proper in this judicial district under CCP section 395 as at least half of the

20  named Defendants resided in Santa Clara County at the commencement of this action, and the

21  injury to personal property alleged occurred within the County of Santa Clara.

22                          **GENERAL ALLEGATIONS**

23      15.    Beginning in fall 2001, Plaintiffs A. and W. Thomas entered into a business

24  relationship with Defendant Conetto. The agreement was that the Thomases, relying on Conetto's

25  apparent expertise in the field, would pay Conetto to aid and assist them in the procurement and

26  purchase of emeralds from Brazil. Eventually, this business arrangement would produce a number

27  of gems, as well as several disputes over their ownership.

28      16.    In or around May 2005, Conetto approached A. Thomas, with the opportunity to

1  purchase an emerald weighing approximately 20,000 carats ("the Emerald").

2       17.    A. Thomas agreed to purchase the Emerald for $7,500, and he and Conetto traveled
3  together to the check cashing business of a mutual acquaintance, Bud Spadafore, where A.
4  Thomas cashed some checks and paid Conetto for the gem.

5       18.    After the sale was complete, A. Thomas and Conetto went to Ringsrud Gemeology
6  in Saratoga, Santa Clara County, California, to have the gem appraised. A. Thomas, Conetto, and
7  Klotz had previously met with Ringsrud Gemology's owner, Ronald Ringsrud ("Ringsrud"), to
8  discuss using emeralds on saddles and women's apparel that Klotz was designing. During that
9  previous meeting, Ringsrud had informed Klotz that he would let her know when he came across
10  the type of emeralds she was seeking.

11       19.    When A.Thomas and Conetto approached Ringsrud to appraise the Emerald,
12  Conetto told Ringsrud that he had just sold the Emerald to A. Thomas and they now wanted it
13  inspected and appraised. Ringsrud inspected the Emerald for approximately an hour to an hour
14  and a half in their presence.

15       20.    Shortly thereafter, on May 24, 2005, Ringsrud contacted A. Thomas to inform him
16  that the appraisal ("the Appraisal") was finished. A. Thomas and Conetto returned to Ringsrud,
17  and A. Thomas paid for the Appraisal and retrieved the Emerald. The Appraisal valued the gem at
18  approximately $2 million. A true and correct copy of the Appraisal is attached hereto as **Exhibit**
19  **"A"**.

20       21.    After picking up the Emerald, A. Thomas and Conetto traveled to the Thomases'
21  home at 17990 Barnard Road in Morgan Hill, Santa Clara County, California, where they cached
22  the Emerald in a black, nondescript, padded duffle bag behind tools inside a cabinet in the
23  Thomases' garage. Nobody else knew where the gem was hidden, not even W. Thomas.

24       22.    Some months later in 2005, Ringsrud called Klotz to inform her that he had located
25  the type of emeralds she needed for use in her business. Klotz responded that she no longer
26  needed these emeralds because she had recently purchased a large emerald from Conetto. After
27  Klotz described the emerald to Ringsrud in great detail, he believed she was discussing the
28  Emerald that he had appraised for A. Thomas in May 2005. Ringsrud had no suspicion, at that

SMITH LC

4

1 | time, of any wrongful conduct on the part of the Defendants.

2 |      23.    On August 13, 2006, the Thomases suffered a house fire while they were on
3 | vacation in Montana. The fire destroyed nearly everything in their house. The reclamation crew
4 | employed by the Thomases' insurers did not find the Emerald, causing the Thomases to assume
5 | that it had been consumed in the fire. The insurers took into their possession the remaining items,
6 | which were not returned to the Thomases. For several years, the Thomases believed that the
7 | Emerald was among the items in the insurer's possession.

8 |      24.    Then, in late February 2009, a friend of the Thomases showed them an October
9 | 2005 Santa Barbara News Press article with a photograph of Defendant Kitchen holding a "19,000
10 | carat" emerald valued at approximately $2 million. A true and correct printout of this article,
11 | retrieved from the Santa Barbara News Press online archives on June 7, 2013, is attached hereto as
12 | **Exhibit "B"**.

13 |      25.    Once the Thomases saw the newspaper article in February 2009, they immediately
14 | knew that the Emerald was not destroyed in the fire and was not in the insurer's possession, and
15 | that it must have been taken from their garage between May 24, 2005 and October 2005. The
16 | Thomases immediately suspected that Conetto and/or some associates must have stolen the
17 | Emerald from the garage some time before the fire in 2006. Prior to that time, Conetto and A.
18 | Thomas were the only persons who knew where the Emerald had been stored, and A. Thomas had
19 | never resold the Emerald to Conetto or any other person. This was the first time they had any
20 | suspicion that Conetto and/or the other Defendants had stolen the Emerald from the Thomases'
21 | home back in 2005. They also began to suspect Defendants' involvement in the disappearance of
22 | other emeralds owned by the Thomases.

23 |      26.    The Thomases soon hired an investigator, Jim Brice Investigations, to look into this
24 | matter. During the investigation, the Thomases learned from a local appraiser, Willow Glen
25 | Appraisal Service, that Defendants – as a group – had previously visited her business to request a
26 | re-appraisal on a 19,000-20,000 carat emerald. After seeing photos of the Emerald, Willow Glen
27 | concluded that it was the same emerald Defendants had brought with them, and that they had
28 | asked her to change the appraisal. This information confirmed the Thomases' fears that Conetto

SMITH LC

SMITH LC

1  and his associates had wrongfully acquired the Emerald and otherwise deprived him of his right to
2  possess it.

3          27.    After obtaining possession of the Emerald, Defendants shaved, cut, or otherwise
4  defaced or damaged the Emerald.

5          28.    During the investigation, the investigator showed Ringsrud the October 2005
6  newspaper article with the picture of Kitchen holding an emerald.  Ringsrud confirmed it was the
7  Emerald that was pictured, and he informed the investigator of the late 2005 conversation he had
8  had with Klotz about her having purchased an emerald from Conetto that matched the description
9  of the Emerald.

10          29.    Days after Ringsrud met with the investigator, Kitchen e-mailed Ringsrud to ask
11  about the investigation and to demand that Ringsrud provide him with any documents relating to
12  the Emerald or the investigation.  Ringsrud did not send any documents to Kitchen.

13          30.    Since that time, with the assistance of Santa Clara County law enforcement
14  officials, the Emerald was found in the possession of a friend of Defendant Klotz.  The Santa
15  Clara Sherriff's Department took it into their possession in June 2010, pending a determination of
16  the Emerald's legal owner.

17          31.    On or around January 9, 2012, Plaintiffs filed the original Complaint in this matter,
18  alleging conversion, breach of fiduciary duty, and conspiracy.

19                          **FIRST CAUSE OF ACTION**

20                              **QUIET TITLE**

21                          **(As Against All Defendants)**

22          32.    Plaintiffs incorporate by reference each and every paragraph of this First Amended
23  Complaint as though fully set forth herein.

24          33.    The Emerald, as described above, is the property that is the subject of this action.

25          34.    As described herein, Plaintiffs have superior title to the Emerald, having purchased
26  it from Conetto in May 2005.

27          35.    Defendants spuriously claim superior title to the Emerald, adverse to Plaintiffs' title
28  claims.  As described herein, Conetto and A. Thomas were the only individuals who knew the

6

VERIFIED FIRST AMENDED COMPLAINT

SMITH LC

1   location of the Emerald.  Defendants wrongfully obtained possession of the Emerald, tried to have

2   it re-appraised, likely changed its form by cutting it, and tried to sell it for a profit.

3         36.     The date of which the determination of title is sought is as of May 24, 2005, the day

4   that A. Thomas and Conetto cached the Emerald in the Thomases' garage, and the last day that

5   Plaintiffs are certain they had the Emerald in their possession.

6         37.     Accordingly, Plaintiffs desire a judicial declaration quieting title in the Emerald.

7                              **SECOND CAUSE OF ACTION**

8                                    **CONVERSION**

9                          **(As Against All Defendants)**

10        38.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as

11   though fully set forth herein.

12        39.     As described herein, Plaintiffs had title to the Emerald, as well as possession of the

13   Emerald, in or around May 2005.

14        40.     After Plaintiffs had obtained title and possession to the Emerald, Defendants

15   intentionally and substantially interfered with Plaintiffs' property by wrongfully taking possession

16   of the Emerald.  Furthermore, Defendants wrongfully retained possession of the Emerald by

17   refusing to turn it over when Plaintiffs demanded its return.  Furthermore, upon information and

18   belief, Defendants cut or otherwise altered the physical form or look of the Emerald.

19        41.     Defendants' actions with respect to the Emerald were inconsistent with Plaintiffs'

20   possessory and ownership of the Emerald and subversive to Plaintiffs' vested interest therein.

21   Plaintiffs did not consent to Defendants' possession of the Emerald, and in fact acted to prevent

22   any other person from obtaining possession to it by hiding it in the garage of their home.

23        42.     Defendants' wrongful possession of the Emerald was a substantial factor in the

24   above-described harm to Plaintiffs.

25        43.     Defendants' actions caused significant monetary and other damages to Plaintiffs,

26   including, but not limited to: a diminution in the value of the Emerald; time and money expended

27   in pursuit of the Emerald; and, the reasonable value of the use of the Emerald.  As a result of

28   Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial, but in no

1 | event less than $1,000,000.

2 | **THIRD CAUSE OF ACTION**

3 | **TRESPASS TO CHATTELS**

4 | **(As Against All Defendants)**

5 | 44.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as

6 | though fully set forth herein.

7 | 45.    As set forth above, Plaintiffs owned and were in possession of the Emerald.

8 | 46.    Defendants intentionally interfered with Plaintiffs' use and possession of the

9 | Emerald. Furthermore, upon information and belief, Defendants damaged the Emerald or

10 | otherwise acted to diminish its value.

11 | 47.    Plaintiffs did not consent to Defendants' actions.

12 | 48.    As set forth above, Defendants' actions have significantly harmed Plaintiffs.

13 | 49.    Defendants actions were a substantial factor in causing Plaintiffs' harm.

14 | 50.    Plaintiffs have been damaged in an amount to be determined at trial, but in no event

15 | less than $1,000,000.

16 | **FOURTH CAUSE OF ACTION**

17 | **BREACH OF FIDUCIARY DUTIES**

18 | **(As Against Defendant Conetto)**

19 | 51.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as

20 | though fully set forth herein.

21 | 52.    In or around fall 2001, Plaintiffs hired, employed, and/or contracted with Conetto

22 | as their agent to aid and assist them in their purchase of emeralds.

23 | 53.    Plaintiffs reposed trust and confidence in Conetto to faithfully and fully represent

24 | their interests and advise them in connection with the acquisition of emeralds.

25 | 54.    Conetto knew the Plaintiffs reposed such trust and confidence in him, encouraged

26 | them to do so, and entered into an agreement to act on their behalf.

27 | 55.    Conetto breached the fiduciary duty he owed Plaintiffs in stealing and secreting

28 | their property, to Plaintiffs' detriment and damages in an amount to be determined at trial but in

SMITH LC

8

1 | no event less than $1,000,000.

2 | **PRAYER FOR RELIEF**

3 |     WHEREFORE, Plaintiffs ANTHONY G. THOMAS and WENDI THOMAS pray as

4 | follows:

5 |

6 | On the FIRST CAUSE OF ACTION:

7 |     1.    A judgment that Plaintiffs hold legal title to the Emerald; and,

8 |     2. ·    An order directing the Santa Clara Sherriff's Department to release the Emerald to

9 | Plaintiffs;

10 | On ALL CAUSES OF ACTION:

11 |     1.    For general and special damages, including but not limited to damages for the

12 | diminution of the Emerald's value and Plaintiffs' loss of use, in an amount to be determined at the

13 | time of trial, and currently estimated to be in excess of $3,000,000.00;

14 |     2.    For prejudgment interest;

15 |     3.    For consequential damages;

16 |     4.    For reasonable attorneys' fees as provided by statute, case law, and/or agreement,;

17 |     5.    For costs of suit; and

18 |     6.    For such other and further relief as the Court deems just and proper.

19 |

20 | Dated: June 14, 2013                SMITH LC

21 |                                     A Professional Law Corporation

22 |

23 |                                  By: _____

24 |                                      STEVEN C. SMITH

25 |                                      MARK T. KEARNEY

                                     JONATHAN D. MASON

                                     Attorneys for Plaintiffs ANTHONY G. THOMAS

                                     and WENDI THOMAS.

26 |

27 |

28 |

9
VERIFIED FIRST AMENDED COMPLAINT

SMITH LC

1

**VERIFICATION**
(C.C.P. § 446)

2 STATE OF CALIFORNIA, COUNTY OF ORANGE

3     I am a plaintiff in this matter, and I have read the contents of the foregoing First Amended

4 Complaint. I hereby certify that the contents thereof are true to the best of my knowledge, except

5 those matter which are alleged on information and belief, and as to those matter, I believe them to

6 be true.

7     I declare under penalty of perjury of the laws of the State of California that the foregoing is

8 true and correct.

9     Executed on June 14, 2013 at ___Reno N.V___

10

11                        ANTHONY G. THOMAS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMITH LC

10
VERIFIED FIRST AMENDED COMPLAINT

EXHIBIT  A





# Ringsrud Gemology

408 741 9077        FAX 408 741 9082
Box 128, Saratoga, California    USA

## Emerald Report

This report is based on the color nomenclature guidelines of the Colored Stone Grading System of the Gemological Institute of America (G.I.A.). Other technical guidelines followed are those of the AGTA (American Gem Trade Association).

This laboratory judges emeralds to current industry standards of quality. The detailed description below is a verbal description using current nomenclature. Any deviation from the quality standards of the colored gemstone industry will be disclosed in the "comments" section. Further information and disclosures are on the reverse of this page.



**Emerald Mineral Specimen:** Hexagonal emerald crystal with two of its faces polished to show color. The emerald is approximately 25.9 cm long. The color is a dark tone of a medium saturation, very slightly yellowish-Green and is semi-transparent. This color is considered to be typical of emeralds from Brazilian localities. The presence of three small zones of mica shist positively identify the emerald as being a natural Brazilian emerald. The color is unenhanced and native.

**Measurements:** The emerald is approximately 25.9 cm long. The base is approximately 12 x 7 cm in size. Near the base are two secondary emerald crystals approximately 6 x 9 x 2.5cm. The last 8 cm of the other end of the crystal tapers from approx.12 down to 3 cm. Weight is estimated to be approx. 20,385 carats or 4077 grams.

**Conclusion:** This measurement places this emerald specimen as one of the largest in the world. The size, along with the classic rich Brazilian color, makes this specimen extremely rare with comparative valuation from $100 per carat and higher. It would serve as the central focus of any important mineral collection.

The items described above have been examined gemologically. The information recorded on this document represents our interpretation of results obtained from the use of gemological instruments as well as grading techniques based on the Color Grading System of the Gemological Institute of America. Weights and measurements are approximate. Document not valid without authorized signature.

Date: _May 24, 2005_                Signature _____

EXHIBIT  B

Welcome,
Friday, June 7, 2013

🔎 Search
Make SBNP my home page

# SANTA BARBARA NEWS-PRESS

SANTA BARBARA
60°

## ArchivesW

### Huge emerald has eBay sellers seeing green

By FRANK NELSON
October 12, 2005 12:00 AM

NEWS-PRESS STAFF WRITER

Partners have more large stones to auction online

It took 10 million years to make and now has a week to sell . . . on eBay.

It's a 19,000-carat, 6.6-pound raw Brazilian emerald that to the uninitiated looks like a lump of green rock but to a serious collector or a museum could be worth as much as $2 million.

That, at least, is the hope of Santa Barbara attorney Eric Kitchen and Michael Marans, owner of the ISold It franchise store in Goleta that specializes in selling goods through the online auction site eBay.

The emerald is being sold on behalf of the Gemworks Mining Co. in Bahia, eastern Brazil, a family business that has been mining for more than 150 years.

Four years ago, through a nonprofit education project aimed at bringing computers into poor schools, Mr. Kitchen was in the Brazilian city of S|0x8b|o Paulo. There he met members of the mining family who were supporting the same charitable program.



Eric Kitchen holds a 19 thousand
karat emerald worth an estimated $2
million dollars near his downtown
office. Photo by MIKE ELIASON/SBNP

Mr. Kitchen said that shared interest developed into a business relationship, and he began importing stones from Gemworks that he sold to wholesalers in the U.S.

The huge emerald marks their first venture with eBay.

It was crated and shipped by FedEx from S|0x8b|o Paulo to San Jose in March. It was offered on eBay back then but attracted only one bid of $200,000 from a would-be buyer in Spain.

That was when Mr. Kitchen called upon the marketing savvy and eBay experience of Mr. Marans. Just before this latest auction, he produced a color brochure that was sent to 100 potential buyers -- collectors, museums and universities. Other possible buyers received e-mails about the emerald while news releases alerted the media.

Mr. Marans said the idea is to generate interest, draw attention to this unique offering and make it stand out among so many other items for sale. "eBay has become so big now, the key is to distinguish yourself," he said.



# LEARN TOGETHER

Join the conversation
about oil, energy and our community
Ask Questions - Get Answers
Learn.SantaMariaEnergy.com

## Related Stories

• Letters : Shine light on government
  ARCHIVE Jun 27, 2012

• Setting your Thanksgiving fears free
  ARCHIVE Nov 15, 2006

• Accelerating gas prices pumping drivers' wallets
  ARCHIVE Feb 2, 2002

• Cota Street condos to have $1 million tags
  ARCHIVE Feb 19, 2005

• Wine futures looking good
  ARCHIVE Mar 29, 2006

• Stormy weather

The $2 million estimate stems from an appraisal by a leading geologist in the U.S. Mr. Kitchen said this opinion was based on scientific data, plus the color and size of the stone, with the conclusion that it was authentic and perhaps worth $100 per carat.

While that equates to $1.9 million, the stone is being offered with a much lower reserve (minimum price) and could possibly be sold for considerably less.

"Two million is definitely the top end," said Mr. Marans. "There's no way of knowing what it will fetch."

The emerald, which has been partly cut and polished to show off the color, was listed Monday night, and the auction runs for one week. The sellers have set an opening price of $5,000 and are asking for incremental bids of $2,500.

The price range of emeralds is very wide depending primarily on color, but also on brilliance and clarity. Five years ago in London, auctioneer Christie's sold a 10-carat emerald for more than $1 million.

Mr. Marans said whoever buys the stone will likely want to see it first and probably have it authenticated, and arrangements are in place to make that possible.

If it doesn't meet the reserve price, he said the sellers will have to decide on the next step.

If the auction goes well, Mr. Kitchen and Mr. Marans hope the emerald will be just the first of a number of similar precious and semiprecious stones they will offer through eBay.

The next one is already sitting in a crate in Mr. Kitchen's downtown office.

This monster, a 265-pound, half-million-carat chunk of smoky quartz, arrived from the same mining company in June and could fetch between $200,000 and $400,000, according to Mr. Kitchen.

"It's a great piece for any museum or a great collector's item," Mr. Kitchen said, admiring the crystal formations forged deep underground by heat and pressure over millions of years. "But best of all, I think it should be the centerpiece in a magnificent garden with the sun shining through it."

e-mail: fnelson@newspress.com

ABOUT EMERALDS

Emerald hardness ranges from 7.5 to 8 on a scale where diamond is a 10.

Emerald is the birthstone for May and the traditional 55th wedding anniversary gift.

Colombian emeralds are among the world's most beautiful. Other sources include Russia, Australia, South Africa and Zimbabwe.

Egyptian emeralds were introduced to the world about 4,000 years ago. Mummies were often buried with emeralds.

SOURCE:

About.com

MIKE ELIASON / NEWS-PRESS PHOTO

Santa Barbara attorney Eric Kitchen hopes to sell this huge emerald on eBay on behalf of a Brazilian mining company.

ARCHIVE Apr 20, 2007
• ON STAGE : Ojai Music Festival starts Thursday
• A transportation dilemma for Santa Barbara County
ARCHIVE Apr 1, 2006
• Letters: Council's bulb-outs will cause accidents
ARCHIVE Aug 5, 2009
• Opinion: Measure D: Politics as promised
ARCHIVE Oct 14, 2006

# EXHIBIT B



2017 JUN 29  A  9: 38

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____DEPUTY
Loma Delacruz



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| A. Thomas et al. | |
|      Plaintiffs, | Case No.: 20121CV216322 |
| vs. | |
| | Order |
| K Conetto. et al | |
|      Defendants. | |

The above matter came on for hearing on June 29, 2017 in Department 8 of the above-entitled Court. The Court issued its tentative ruling on June 28, 2017 and no party contested the tentative ruling which now becomes the order of the Court as follows:

Defendant Conetto's Motion to Dismiss for Failure to Prosecute is UNOPPOSED and GRANTED. Dismissal is mandatory when plaintiffs have failed to bring this matter to trial within 5 years after filing the complaint. The complaint was filed more than 5 years ago on January 9, 2012. CCP Section 583.310 and 583.360 (a)

Dated : 6-29-17

_____

Hon. Maureen A. Folan
Judge of the Superior Court

1

Case No20121CV216322 Order

# EXHIBIT C

| From: | LeonGuerrero, Michael |
| To: | jlh@bankruptcyreno.com |
| Cc: | Phillip Wang; LeonGuerrero, Michael |
| Subject: | Santa Clara County Emerald - Case No BK-N-14-50333-BTB; Case No BK-N-14-50331-BTB; and ADV. PROC. No. 17-05005-BTB |
| Date: | Friday, December 14, 2018 4:48:19 PM |
| Attachments: | 1902974.pdf |

Mr. Hartman, this email follows our conversation from December 6, 2018, wherein we discussed the Bankruptcy Court Proceeding in Case No BK-N-14-50333-BTB; Case No BK-N-14-50331-BTB; and ADV. PROC. No. 17-05005-BTB (In *Re Anthony Thomas and Wendi Thomas, AT Emerald, LLC; Jeri Coppa-Knudson, Trustt vs. Kenneth Conetto, et al.*)

I informed you in our conversation that I had reviewed the court docket in ADV. PROC. No. 17-05005-BTB and had printed out several pleadings you filed with the bankruptcy court, including the attached Motion for Entry of Default Judgment ("Motion") (hearing date September 19, 2018). I asked you whether you possessed any evidence proving legal ownership of the Santa Clara Emerald ("emerald") – either by the Anthony and Wendi Thomas Estate, or AT Emerald, LLC – particularly since your attached Motion for Entry of Default states that "Plaintiff has been in contact with counsel for Kenneth Conetto as well as the Santa Clara County Sheriff. Both have agreed to enter into a stipulation to a declaratory determination ==that the estate has exclusive title to the Santa Clara Emerald in this action==, permitting Plaintiff to take possession of the Santa Clara Emerald. However, the Santa Clara County Sheriff requires a bankruptcy court judgment to allow it to release the Santa Clara Emerald. Upon entry of the judgment against the remaining defendants, Conetto and the Santa Clara County Sheriff will execute the stipulation." (Emphasis added.) In response, you did not provide any documentation showing or proving legal entitlement or ownership of the emerald.

Because the Sheriff's Office was recently served with a Judgment, following your unopposed Motion for Entry of Default, I asked you when you would be filing the Stipulation from Conetto that you represented to the Court would be filed after the judgment was entered. You indicated that you were not intending to file the stipulation because the Judgment had been entered. I stated that this appeared confusing to me, since it was not what was represented to the Court in your default motion. We both agreed that due to Sheriff's Office concerns relating to actual legal ownership and entitlement to the emerald, the Sheriff's Office would not turn over possession of the emerald to the Thomas estate and trustee until, at a minimum, the Conetto stipulation was signed and filed with the Court as represented in the Motion. You indicated that you would attempt to obtain Conetto's stipulation and file it with the court, prior to handing over of the emerald, but you were unsure if Conetto was still alive or how to contact him.

Since our December 6, 2018 conversation, I have now conducted more research and discussed this case with the Sheriff's Office, Detective Quinonez, the County Counsel's Office, and anyone else at Santa Clara County who has any knowledge of the emerald, Conetto, Thomas, etc. I have discovered that no one recalls speaking directly with you, and no one recalls stating to you that the Sheriff's Office has "agreed to enter into a stipulation to a declaratory determination that the estate has exclusive title to the Santa Clara Emerald in this action".

Based on this research, I request that you tell me as soon as possible with whom at the Sheriff's

Office you allegedly secured an "agreement" for the Sheriff's Office to enter into a stipulation establishing that the Thomas estate has exclusive title to the Santa Clara Emerald?  I request that you list the name of the individual from the Sheriff's Office, the date/time of the conversation, and provide any email or written correspondence establishing that the Sheriff Office's allegedly agreed to enter such a stipulation.  My research indicates that no such stipulation was ever agreed to by the Sheriff's Office or County.

I am copying Phillip Wang, a Partner at the Rimon Law Firm who is representing Santa Clara County and assisting me with these bankruptcy proceedings. Please include him on your response to this email.  Thank you for your prompt attention and your anticipated response to my inquiry.

Mike

**Michael J. Leon Guerrero**
Deputy County Counsel
Office of the County Counsel, County of Santa Clara
70 West Hedding Street, East Wing, 9th Floor
San Jose, CA 95110
Main Tel: (408) 299-5900; Direct (408) 299-5974; Fax (408) 292-7240
Email: michael.leonguerrero@cco.sccgov.org

**NOTICE:**  The information in this email is confidential and may be protected by the attorney-client and/or work product privileges.  Please delete this email if you are not the intended recipient.

1   Jeffrey L. Hartman, Esq., #1607
    **HARTMAN & HARTMAN**
2   510 West Plumb Lane, Suite B
    Reno, Nevada 89509
3   Telephone: (775) 324-2800
    Telecopier: (775) 324-1818
4   notices@bankruptcyreno.com

5   Attorney for Jeri Coppa-Knudson, Trustee

6

7              **UNITED STATES BANKRUPTCY COURT**

8                   **DISTRICT OF NEVADA**

9   IN RE:                   CASE NO.   BK-N-14-50333-BTB

10   ANTHONY THOMAS and       CASE NO.   BK-N-14-50331-BTB
    WENDI THOMAS,           (Jointly Administered)
11
    AT EMERALD, LLC,          CHAPTER   7
12
          Debtors.
13   _____/

14
    JERI COPPA-KNUDSON, TRUSTEE,    ADV. PROC. NO. 17-05005-BTB
15
         Plaintiff,
16                     **MOTION FOR ENTRY OF DEFAULT**
    vs.                      **JUDGMENT PURSUANT TO F.R.CIV.P.**
17                     **55 AND F.R.BANKR.P. 7055**
    KENNETH CONETTO, ESTATE OF
18   ERIC KITCHEN, KIMBERLY KLOTZ,
    WAYNE CATLETT and SHERIFF OF
19   SANTA CLARA COUNTY,        **Hearing Date:    September 19, 2018**
                                **Hearing Time:    10:00 a.m.**
20           Defendants.

21   _____/

22        Plaintiff Jeri Coppa-Knudson, in her capacity as Chapter 7 Trustee of the bankruptcy

23   estates of Anthony Thomas and Wendy Thomas and AT Emerald, LLC, which two cases are

24   jointly administered, and as Plaintiff in this adversary proceeding, through counsel, hereby

25   requests entry of a default judgment against Defendants Estate of Eric Kitchen, Kimberly

26   Klotz and Wayne Catlett pursuant to F.R.Civ.P. 55 and F.R.Bankr.P. 7055. This motion is

27   supported by the separately filed Declaration of Jeffrey Hartman. As permitted by F.R. Evid.

28   201, Plaintiff requests the Court take judicial notice of the papers on file in this case.

### FACTS

1. The Complaint in this adversary proceeding was filed on February 14, 2017.

2. As permitted by F.R.Bankr.P. 7004(b), Defendants Estate of Eric Kitchen, Kimberly Klotz and Wayne Catlett ("Defendants") were served with a summons and the Complaint by mail on May 11, 2017. **Adv. DE 10**.

3. The mailings to Estate of Eric Kitchen and Kimberly Klotz were returned by the US Postal Service as undeliverable. Plaintiff had three addresses for Wayne Catlett; two of the packages came back as undeliverable and the third, to a post office box, did not.

4. Plaintiff then obtained the Court's permission to publish notice of the summons and complaint in local newspapers in geographical areas where Defendants Estate of Eric Kitchen and Kimberly Klotz were most likely to see them. Proof of publication for Kimberly Klotz was filed on October 4, 2017, **Adv. DE 18**, as was proof of publication for Estate of Eric Kitchen, **Adv. DE 19**.

5. On December 7, 2017, Plaintiff filed her Notice Of Intent To Take Default. **Adv. DE 20**. The Notice Of Intent To Take Default provided Defendants until December 20, 2017 to file an answer or otherwise respond to the Complaint. Defendants failed to respond.

6. On February 1, 2018, Plaintiff filed her Request For Entry of Default. **Adv. DE 21**.

7. On February 1, 2018, the Clerk entered a Default. **Adv. DE 23**.

8. The allegations in the Complaint arise from plaintiff learning of the existence of an emerald currently held by the Santa Clara County, California Sheriff ("Santa Clara Emerald"), which emerald was not scheduled by Debtors Thomas or AT Emerald. Based upon information and documents, Plaintiff learned of a potential claim of interest in the Santa Clara Emerald by defendants. The names of the defendants were taken from a proceeding entitled Thomas v. Kenneth Conetto, case no. 1-12-CV-216322, a collection action then pending in California Superior Court, Santa Clara County ("Thomas v. Conetto"). A copy of that complaint was attached to the instant complaint as **Exhibit A**.

///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

1    Plaintiff has been in contact with counsel for Kenneth Conetto as well as the Santa

2  Clara County Sheriff.  Both have agreed to enter into a stipulation to a declaratory

3  determination that the estate has exclusive title to the Santa Clara Emerald in this action,

4  permitting Plaintiff to take possession of the Santa Clara Emerald.  However, the Santa Clara

5  County Sheriff requires a bankruptcy court judgment to allow it to release the Santa Clara

6  Emerald.  Upon entry of the judgment against the remaining defendants, Conetto and the

7  Santa Clara County Sheriff will execute the stipulation.

8    **WHEREFORE**, Plaintiff prays for Default Judgment against Defendants Catlett,

9  Klotz and Kitchen, declaring they have no ownership claim or interest in the Santa Clara

10  Emerald, and  an order and judgment directing the Santa Clara Sheriff to turnover custody

11  and control of the Santa Clara Emerald to Plaintiff Jeri Coppa-Knudson.

12    DATED:  August 9, 2018.

13    **HARTMAN & HARTMAN**

14

15    /S/ Jeffrey L. Hartman
Jeffrey L. Hartman, Esq.
Attorney for Jeri Coppa-Knudson, Trustee

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2        I certify that I am an employee of Hartman & Hartman, and that on this date I caused

3  to be served by U.S. Mail, postage prepaid, a copy of the within document upon:

4        Wayne Catlett
          PO Box 5692
5       Santa Barbara, CA 93150-0647

6        Further, I emailed a copy of this document to Anthony Thomas at his requested email

7  address, ATEmerald@gmail.com.

8        DATED:  August 9, 2018.

9

10                        /S/ Stephanie Ittner
                           Stephanie Ittner

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800